**No. 26-6460**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

DARRYL KEITH LOUIS, JR.,
*Plaintiff-Appellant,*

*v.*

JOEL ANDERSON,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of South Carolina
No. 1:25-cv-02958 (Hon. Bruce Howe Hendricks, U.S. District Judge)

**APPELLANT'S OPENING BRIEF**

Lillian Novak
Derrick Luster
Samuel Weiss
RIGHTS BEHIND BARS
1800 M St. NW Front 1, #33821
Washington, DC 20033

October 5, 2026

## DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, Plaintiff-Appellant Darryl Keith Louis, Jr., makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? No.
2. Does party/amicus have any parent corporations? No.
3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? No.
4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? No.
5. Is party a trade association? No.
6. Does this case arise out of a bankruptcy proceeding? No.
7. Is this a criminal case in which there was an organizational victim? No.

Date: October 5, 2026

*/s/ Lillian Novak*
Lillian Novak
Rights Behind Bars
1800 M St. NW Front 1 #33821
Washington, DC 20033

*Counsel for Appellant Darryl Louis*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii
INTRODUCTION ........ 1
JURISDICTIONAL STATEMENT ........ 2
STANDARD OF REVIEW ........ 2
I. Factual History ........ 3
II. Procedural History ........ 6
SUMMARY OF ARGUMENT ........ 8
ARGUMENT ........ 9
I. Louis's challenge is ripe. ........ 11
II. Prohibiting Louis from wearing a kufi during transport violates RLUIPA. ........ 16
a. Forcing Louis to remove his kufi during transport is a substantial burden on his religious practice. ........ 18
b. SCDC has no compelling interest in forcing Louis to remove his kufi during transport. ........ 22
c. Even if SCDC has a compelling interest, it is not employing the least restrictive means. ........ 23
CONCLUSION ........ 25
CERTIFICATE OF COMPLIANCE ........ 27
CERTIFICATE OF SERVICE ........ 28

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ........ 11
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 3
*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 854 F. App'x 52 (4th Cir. 2021) ........ 16
*Carter v. Fleming*, 879 F.3d 132 (4th Cir. 2018) ........ 22
*Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203 (4th Cir.1992), *as amended* (Nov. 2, 1992) ........ 12
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) .. 24
*Couch v. Jabe*, 679 F.3d 197 (4th Cir. 2012) ........ 18, 22, 25
*Darby v. Cisneros*, 509 U.S. 137 (1993) ........ 16
*Doe v. Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013) ........ 11, 12, 13
*Faver v. Clarke*, 24 F.4th 954 (4th Cir. 2022) ........ 24
*Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002) ........ 11
*Garner v. Morales*, No. 07-41015, 2009 WL 577755 (5th Cir. Mar. 6, 2009) ....... 17
*Greenhill v. Clarke*, 944 F.3d 243 (4th Cir. 2019) ........ 24
*Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017) ........ 14
*Holt v. Hobbs*, 574 U.S. 352, 361 (2015) ........ 19, 24, 25
*Holt v. Payne*, 85 F.4th 873 (8th Cir. 2023) ........ 21
*Jehovah v. Clarke*, 798 F.3d 169 (4th Cir. 2015) ........ 20
*Jones v. Bock*, 549 U.S. 199 (2007) ........ 15
*Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) ........ 17, 18, 21, 22
*Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205 (10th Cir. 1999) ........ 22
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........ 3
*Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006) ........ 2
*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ........ 14
*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) ........ 11
*Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474 (2021) ........ 15, 16
*Pendleton v. Jividen*, 96 F.4th 652 (4th Cir. 2024) ........ 20
*Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549 (1947) ........ 11
*Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022) ........ 17, 19
*Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262 (4th Cir. 2013) ..... 11
*Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994) ........ 2
*Smith v. Ozmint*, 578 F.3d 246 (4th Cir. 2009) ........ 22

*Taylor v. Byars*, No. 11-915, 2012 WL 2149756 (D.S.C. May 23, 2012), *report and recommendation adopted*, 2012 WL 2149761 (D.S.C. June 13, 2012), *aff'd*, 490 F. App'x 603 (4th Cir. 2012) .......... 15
*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981) .......... 18
*Wall v. Rasnick*, 42 F.4th 214 (4th Cir. 2022) .......... 3
*Warsoldier v. Woodford*, 418 F.3d 989, 991 (9th Cir. 2005) .......... 18
*Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200 (4th Cir. 2022) .......... 11,12

**STATUTES**

28 U.S.C. § 1291 .......... 2
28 U.S.C. § 1331 .......... 2
42 U.S.C. § 1997e(a) .......... 15
42 U.S.C. § 2000cc *et seq*. .......... 2
42 U.S.C. § 2000cc-1(a) .......... 16
42 U.S.C. § 2000cc-2(b) .......... 22
42 U.S.C. § 2000cc-3(g) .......... 17, 22
42 U.S.C. § 2000cc-5(7)(A) .......... 17

**RULES**

Fed. R. App. P. 4(a) .......... 2

**OTHER AUTHORITIES**

146 Cong. Rec. S7775 (July 27, 2000) .......... 21

## INTRODUCTION

Plaintiff Darryl Keith Louis, Jr. is a devout Muslim incarcerated by the state of South Carolina. Louis's religious beliefs require him to wear a kufi—a close-fitting, brimless head covering—at all times. Removing his kufi is anathema to his religious beliefs. He believes it is tantamount to rejecting the teachings of the prophet and condemns him to burning in hell.

Per a written policy, the South Carolina Department of Corrections (SCDC) allows Muslim prisoners to wear kufis on prison grounds, both inside and outside. But the policy is silent on whether prisoners may wear religious head-coverings while in SCDC custody but off prison grounds, such as while prison staff transport them between prisons or to court appearances. SCDC staff have repeatedly forced Louis to remove his kufi while in transit, under threat of discipline, raising his security level, refusing to take him to court, or losing other privileges such as phone calls. SCDC bars kufis in transport even though they allow secular hats during transit.

SCDC's conduct violates the Religious Land Use and Institutionalized Persons Act (RLUIPA), which prohibits state entities from substantially burdening the religious exercise of incarcerated people. Though the magistrate recommended entering judgment in favor of Louis, the district court never reached the merits of Louis's RLUIPA claim, because it found that his case was not ripe. It held that,

before bringing this case, Louis was required to formally request a change in SCDC's written policy. This was error.

Louis presented evidence that he was repeatedly and concretely injured by SCDC's kufi policy, making this case fit for judicial decision. He exhausted his administrative remedies per the Prison Litigation Reform Act (PLRA) and was not required to exhaust other futile and tangentially related administrative processes. As such, this Court should reverse the district court's dismissal on ripeness grounds and enter summary judgment in favor of Louis on the merits.

## JURISDICTIONAL STATEMENT

Louis appeals the district court's grant of Defendant's Motion to Dismiss on March 26, 2026. The district court had jurisdiction under 28 U.S.C. § 1331. Louis brought claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. Louis filed a timely notice of appeal on April 16, 2026. J.A. 120. *See* Fed. R. App. P. 4(a). This Court has jurisdiction over the appeal of the district court's final judgment under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This Court reviews dismissal of a case for lack of ripeness *de novo*. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). It also reviews the denial of summary judgment motions under Rule 56 *de novo*. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Summary judgment is appropriate where "there is no genuine issue as to

material fact and … the moving party is entitled to judgment as a matter of law." *Id.* Courts must interpret "[t]he facts, and inferences to be drawn from them, ... in the light most favorable to the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). As such, summary judgment is only appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court liberally construes filings by *pro se* litigants. *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022).

## STATEMENT OF THE ISSUES

I. Whether Louis's failure to seek a change in prison policy before filing this suit renders the dispute unripe.

II. Whether prohibiting Louis from wearing his kufi on prison transports violated RLUIPA.

## STATEMENT OF THE CASE

### I. Factual History

Plaintiff-Appellant Darryl Keith Louis, Jr. is a prisoner currently in the custody of the South Carolina Department of Corrections ("SCDC"). Louis is a practicing Muslim. J.A. 066. He goes by the Muslim name Sadiq. J.A. 066. One of his religious practices is wearing a kufi head covering at all times. J.A. 066. A kufi is a close-fitting, brimless hat. J.A. 066. Louis's kufi is made of a white, mesh

material. J.A. 066. Under Louis's belief system, removing his kufi is a rejection of the Sunnah and condemns him to being burned in hell. J.A. 067–068.

Since 2017, Louis has been permitted to wear his kufi while inside or on the grounds of SCDC prisons, pursuant to SCDC Policy PS-12.05, titled "Inmate Religion," which states in full: "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors" J.A. 067; J.A. 102. But the written policy is silent as to whether Muslim prisoners may wear a kufi outside SCDC institutions, such as when SCDC is transferring them between prisons or escorting them to court appearances. J.A. 102.

Over the course of his time in prison, officers have repeatedly ordered Louis to remove his kufi while being transported. J.A. 067. This occurs even though Louis is strip searched before and after each transportation ride, and the strip search includes officer inspection of his kufi. J.A. 067. Whenever Louis refuses to remove his religious head covering, officers have threatened to write him disciplinary reports for his "failure to obey a direct order" or to cancel his scheduled transportation ride for non-compliance. J.A. 067. If written up, Louis faces the consequence of having his security level heightened. J.A. 068. Occasionally, select officers have allowed him to keep his kufi on while in transport; but this arbitrary permissive stance is not guaranteed. J.A. 067.

SCDC officers have never explained to Louis their rationale for disallowing kufis on transportation. When Louis has asked, officers have responded with "I don't know sir," "I'm just following the rules," and "If you don't like the rule, don't come to prison." J.A. 068. Notably, SCDC does not bar wearing secular hats while on transportation. J.A. 068. Mr. Louis has been transported with other incarcerated people donning caps, toboggans, headbands, and rain hats. J.A. 068. He has occasionally worn such hats during transport without issue after SCDC staff required that he remove his kufi. J.A. 068.

In January 2025, Louis filed a Step 1 grievance requesting permission to wear his kufi on all future transportation movements. J.A. 049. The warden denied Louis's grievance, explaining that SCDC's "Inmate Grooming Standards" and "Inmate Religion" policies do not permit prisoners to wear a kufi outside the institution. J.A. 049. In February 2025, Louis filed a Step 2 grievance appealing the warden's decision. J.A. 046–047. Staff denied the appeal, with the reviewing officer stating that "Muslim inmates are currently prohibited from wearing a kufi on transportation runs per [Inmate Grooming Standards and Inmate Religion] policies." J.A. 046. Louis then commenced this lawsuit.

During the pendency of this district court litigation, Defendant continued to force Louis to remove his kufi during transport. On three occasions in July and August 2025, Louis was required to take off his kufi on transport rides. J.A. 070. On

one of these rides, Louis relinquished his kufi under threat that he would not be transported to the court appearance and would have to forfeit a telephone call the next day. *Id.*

In October 2025, while transferring Louis from one prison to another, the Major of SCDC's Division of Security directed Louis to remove his kufi, explaining that "kufis are not allowed to be worn while on transportation rides." J.A. 071; *see also* J.A. 104. In December 2025, while taking Louis to a court hearing in a separate matter, SCDC security personnel again advised Louis that "SCDC does not allow kufis to be worn during transport." J.A. 105. The officer issued Louis an ultimatum: either remove the kufi and leave it in the dorm or miss his court appearance for "fail[ing] to obey a direct order." J.A. 105–106. Louis chose to remove his kufi, violating his religious practices to make his scheduled trip. *Id.* The next day, as he prepared to return to court, a different SCDC officer issued him the same ultimatum. J.A. 107.

## II. Procedural History

Louis initiated this lawsuit on April 7, 2025. J.A. 033–045. On November 10, 2025, Defendant-Appellee Joel Anderson filed a motion to dismiss for lack of jurisdiction or, alternatively, for summary judgment. J.A. 072–073; J.A. 127. Thereafter, Louis filed two motions for summary judgment, on November 12, 2025, and December 15, 2025, respectively. J.A. 127; J.A. 128. On December 1, 2025,

Defendant filed a response in opposition to Louis's first motion for summary judgment. J.A. 127. Louis filed a response in opposition to Appellee Anderson's motion to dismiss. J.A. 128. Notably, Anderson did not oppose Louis's second motion for summary judgment. J.A. 127–128.

Magistrate Judge Shiva Hodges issued a Report and Recommendation advising the Court to, in relevant part, deny Anderson's motion to dismiss, grant Louis's motions for summary judgment, and award Louis the relief he seeks. *See* J.A. 001–023.

On February 18, 2026, Anderson filed an objection to the Report and Recommendation. *See* J.A. 109–119. He argued that Louis's RLUIPA claim was neither justiciable nor ripe for adjudication because Louis had not requested a religious policy revision per the process outlined in SCDC's written policy. J.A. 109–119.

On March 26, 2026, the district court declined to adopt the Magistrate Judge's Report and issued an order granting Anderson's motion to dismiss, denying Louis's motions for summary judgment as moot, and dismissing the action without prejudice. J.A. 024–031. The district court dismissed the action on the ground that Louis's claim was not ripe because he did not complete the formal policy revision request process contained in SCDC's written policies. J.A. 025. The district court

did not reach the merits of Louis's summary judgment motions. *See* J.A. 024–031. Louis timely appealed. J.A. 120.

## SUMMARY OF ARGUMENT

I. Louis's case is ripe. He presents evidence of a recurring, concrete injury. The final positions of both parties are clear and in the record. And hardship favors hearing Louis's case now instead of requiring him to endure months of additional burden to his religious practice while he completes a tangential and futile administrative process. In holding otherwise, the district court ignored key evidence in the record and impermissibly imposed an extra-statutory exhaustion requirement.

II. SCDC violated RLUIPA when officers repeatedly forced Louis to remove his kufi on transport in violation of his religious beliefs. Mr. Louis has shown that Defendant's conduct constitutes a substantial burden under RLUIPA. SCDC repeatedly put Louis between the "proverbial rock and hard place," requiring him to choose between violating his religious beliefs or facing prison discipline and loss of privileges. That the prison's policy barring kufis on transport is not written down is immaterial; RLUIPA contains no such requirement. Likewise, that some officers sometimes deviated from this policy and allowed Louis to wear his kufi does not defeat substantial burden. Allowing prisons to win RLUIPA cases on

substantial burden by arbitrarily permitting religious practice *sometimes* would render RLUIPA a dead letter. Defendant, for his part, does not contest substantial burden. Nor does he proffer any purported compelling interest for SCDC's policy banning kufis or argue that it is the least restrictive means, both of which are the prison's burden to carry. Given that the undisputed facts show an RLUIPA violation, this Court should enter summary judgment for Louis. In the alternative, it should remand for further proceedings.

## ARGUMENT

Louis pled and proffered evidence to support a textbook RLUIPA violation. The record below contains a series of affidavits outlining six instances, and alluding to countless more, when SCDC staff, "per policy," forced Louis to choose between removing his kufi and facing prison discipline. *See* J.A. 070 (citing three instances); J.A. 104 (citing one instance); J.A. 105–106 (same); J.A. 107 (same); J.A. 067 (alluding to many more). Louis further provides evidence that SCDC's refusal to allow kufis on transport has no security rationale, and he proffers less restrictive means through which the prison could mitigate any purported security concerns.

Defendant never attempted to defend SCDC's conduct as compliant with RLUIPA. He did not dispute that Louis's religious practice was substantially burdened. He never names any compelling interest that SCDC aims to accomplish

by banning kufis during transport. And he never considers Louis's proffered alternatives or argues that the current practice is the least restrictive. Instead, he points the court to an array of ancillary doctrines—exhaustion, *Ex parte Young*, standing, mootness, ripeness—contending that Louis's claim cannot be heard. *See* J.A. 074–083; J.A. 109–119; *see also* Defendant's Reply to Plaintiff's Objection to Report and Recommendation Recommending that District Court Deny Plaintiff's Motion for a Preliminary Injunction, ECF No. 51; Defendant's Response to Plaintiff's Motion for a Preliminary Injunction, ECF No. 32.

The district court rightly rejected most of these attempts but erred in adopting Defendant's ripeness argument. The district court held that Louis's alleged RLUIPA violation was not yet fit for judicial intervention because—though Louis had been personally wronged many times by SCDC's stance on kufis during transport—he had not formally sought a change in policy from the prison. This holding gets ripeness backward. SCDC concretely injured Louis every time its staff unjustly forced him to remove his kufi. Had Louis sought to change prison policy without bearing the brunt of it, then Defendant might have a ripeness argument. But the opposite is true here; this case is ripe.

Because Louis's claim is justiciable and the record shows an unjustified substantial burden on his religious practice, this Court should vacate the district

court's dismissal and enter summary judgment in his favor. In the alternative, the Court should reverse and remand for further proceedings.

## I. Louis's challenge is ripe.

The district court erred when it held that Louis's claim was unripe because he had failed to submit a written request for a policy change. "The doctrine of ripeness arises from the case or controversy requirement of Article III." *Whitaker v. Monroe Staffing Servs.*, LLC, 42 F.4th 200, 206 (4th Cir. 2022). "The purpose of the ripeness doctrine is to require courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in 'abstract disagreements.'" *Scoggins v. Lee's Crossing Homeowners Ass'n,* 718 F.3d 262, 270 (4th Cir. 2013) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). In determining ripeness, courts must balance two prongs: (1) "the fitness of the issues for judicial decision" and (2) the "hardship to the parties of withholding court consideration." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002) (*quoting Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

A claim is not fit for judicial decision "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). A claim is ripe when it is "presented in a clean-cut and concrete form." *Id.* (citing *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). Hardship is "measured by the immediacy of the threat and

the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law.'" *Doe*, 713 F.3d at 759. "Because ripeness is peculiarly a question of timing," courts "may look to factual developments that occurred after the complaint was filed to determine whether … claims were ripe for review at the time of the district court's judgment." *Whitaker*, 42 F.4th at 208.

Louis's RLUIPA claim is fit for judicial determination. The harm to his religious rights is concrete and in no way speculative. SCDC's policy, according to its own staff, bars him from wearing his kufi on transport. J.A. 046; J.A. 049; J.A. 070; J.A. 105–106. He has been repeatedly forced to remove his kufi in violation of his religious beliefs. J.A. 067; J.A. 070; J.A. 104; J.A. 105–106; J.A. 107. Being forced to remove his kufi under threat of punishment is a violation of Louis's religious rights and an injury under RLUIPA. *See infra* Section II. This is not a pre-enforcement challenge. *See Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992), as amended (Nov. 2, 1992) (holding case was not ripe when plaintiff sought relief from the FDIC before the agency took any action against the plaintiff). It is not even a challenge where some of the harm plaintiff fears has come to fruition while other breaches remain speculative. *See Whitaker*, 42 F.4th at 209 (holding, in contract dispute wherein plaintiff alleged that defendant did not make a series of payments, that the claim *was* ripe once the defendant missed a single payment because the plaintiff "had suffered at least one injury."). Louis has been

repeatedly, concretely harmed by SCDC and seeks to enjoin further unlawful conduct of the exact same nature. This is sufficient to establish ripeness.

Hardship to the parties also favors hearing Louis's case now. The hardship standard asks courts to assess the "immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Doe*, 713 F.3d at 759. This standard demonstrates the inapplicability of ripeness doctrine to this case. The threat to Louis is more than "immediate;" it is ongoing. *See* J.A. 070; J.A. 104–107 (identifying six times when Louis was commanded to remove his kufi on transport in a five-month period while this litigation pended in the district court). Requests for policy changes, made via Section 4.7 of the "Inmate Religion" Policy, the procedure which the district court held Louis should have employed prior to suit, are considered only once a year. J.A. 089 ("The request will be considered at the same time as the policy's annual review"). Louis is burdened by being forced to repeatedly endure injury to his religious practice and should not have to continue suffering such injury for up to twelve months more. The prison's position is already in the record; it is not burdened by losing the opportunity to restate it through the Section 4.7 procedure.

The district court held that this matter was unripe because Louis has not petitioned the prison chaplain to update the "Handbook of Inmate Religious Practice" under a process outlined in "Inmate Religion, Section 4.7." J.A. 029.

Without having done so, Defendant argued and the district court held, Louis "has not yet given SCDC a chance to consider a request for amendment of the policy to allow Muslims to wear a kufi outside of its institutions." J.A. 027; J.A. 029. "Because there has been no specific determination that a kufi cannot be worn during transport, the Court cannot say whether any hypothetical policy or even a denial of Plaintiff's amendment request would infringe on Plaintiff's religious practices in violation of RLUIPA." J.A. 029.

This analysis entirely ignores evidence in the record that, first, SCDC currently has a policy in place banning kufis on transport (*see* J.A. 046; J.A. 049; J.A. 070; J.A. 105–106), and, second, senior SCDC officials have already rejected Louis's request to modify this policy (*see* J.A. 046; J.A. 049). As explained *infra* at 18–19, the fact that SCDC's kufi policy is not contained in its formal written policies is immaterial. Multiple agency actors have acknowledged its existence and enforced it against Louis. J.A. 046; J.A. 049; J.A. 067, J.A. 070; J.A. 105–106. Requiring Louis to petition to have the policy changed after his request to wear his kufi on transport was denied by the warden and another senior official would be futile and is not required to establish ripeness. *Hamilton v. Pallozzi*, 848 F.3d 614, 621 (4th Cir. 2017), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022) (holding that plaintiff did not need to apply for a firearms

permit because any such application would be futile in light of Assistant Attorney General's statement that his criminal conviction was disqualifying).)[1]

The district court decision ultimately confuses ripeness with exhaustion, and an extra-statutorily definition of it. The U.S. Supreme Court has recently explained, unanimously and summarily, that when a state official has adopted a position, the "relatively modest" demands of finality are met and plaintiffs have a ripe cause of action to challenge it, even when there are additional administrative procedures they could have pursued. *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 479 (2021). The requirement of seeking an exemption sounds in administrative

---

[1] *Taylor v. Byars* does not save Defendant's ripeness argument. No. 11-915, 2012 WL 2149756, at *2 (D.S.C. May 23, 2012), *report and recommendation adopted*, 11-915, 2012 WL 2149761 (D.S.C. June 13, 2012), *aff'd*, 490 F. App'x 603 (4th Cir. 2012). In its decision, the district court quotes a portion of Defendant's briefing discussing *Taylor* that mischaracterizes its holding and record. J.A. 027–28. *Taylor* is not a ripeness case. The district court dismissed the case for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), as required by 42 U.S.C. § 1997e(a), because, in addition to failing to petition the chaplain, the plaintiff never filed grievances naming the relief he sought. 2012 WL 2149756, at *1–*2. *Taylor* discussed SCDC's inmate religion policy and petitions to the chaplain in the context of its exhaustion analysis. *Id.* It never mentions ripeness, nor did the briefing below. *Id.*; *Taylor v. Byars*, No. 11-915, ECF 39-1, Memorandum in Support of Motion for Summary Judgment (D.S.C. Feb. 6, 2012); *Taylor v. Byars*, No. 11-915, ECF 51, Reply Memorandum in Support of Motion for Summary Judgment (D.S.C. Dec. 21, 2011). Though Defendant's ripeness argument sounds in exhaustion, Defendant was clear in his briefing below that he "is not arguing that the Plaintiff failed to exhaust under the dictates of the PLRA but rather that the Plaintiff has not presented a claim that is ripe for adjudication in the first place." J.A. 079. Because PLRA exhaustion is an affirmative defense explicitly disclaimed below, this court should not consider it on appeal in the first instance. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (PLRA exhaustion is an affirmative defense).

exhaustion, not ripeness, and courts may not tag on exhaustion requirements to statutes that lack them. *Id.*; *see also Darby v. Cisneros*, 509 U.S. 137, 144–54 (1993). This Court has likewise held that the "hypothetical availability" of administrative processes "tangential" to ongoing direct enforcement do not suggest that a claim is not ripe. *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 854 F. App'x 521, 525 (4th Cir. 2021). The application of *Pakdel* to the present case is particularly clear because Congress *did* create an exhaustion requirement for this claim in the PLRA and the plaintiff *fulfilled it*. *See* J.A. 046–049. Yet the court held that he had to go above mere administrative exhaustion to seek a policy change, even as he experienced the exact concrete harms Congress passed RLUIPA to prevent. Nothing in RLUIPA, the PLRA, or Article III required him to go further and seek a general policy change.

## II. Prohibiting Louis from wearing a kufi during transport violates RLUIPA.

Louis's RLUIPA claim should be resolved in his favor as a matter of law. Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the government demonstrates that the imposition of the burden on that person … is in furtherance of a compelling governmental interest[] and is … the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc–1(a). The plaintiff has the initial burden of establishing that the defendant has substantially

burdened their religious exercise. *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022). Once the plaintiff makes this showing, "the government has the burden to show that its policy satisfies strict scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest." *Id.* In passing RLUIPA, Congress "intended to provide as much protection as possible to prisoners' religious rights" and "mandated that RLUIPA be construed 'in favor of broad protection of religious exercise.'" *Lovelace v. Lee,* 472 F.3d 174, 186 (4th Cir. 2006) (quoting 42 U.S.C. § 2000cc–3(g)).

"RLUIPA broadly defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Lovelace,* 472 F.3d at 186 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Wearing a kufi, a common Muslim practice, squarely falls within the statute's definition of religious exercise. J.A. 067 ("One tenet of my belief system is to wear a kufi at all times"); *see also Garner v. Morales*, No. 07-41015, 2009 WL 577755, at *4 (5th Cir. Mar. 6, 2009) (holding that wearing a kufi "easily satisf[ies]" this "broad definition of religious exercise").

Louis has presented evidence, in the form of multiple declarations, that his religious practice of wearing a kufi was repeatedly substantially burdened. J.A. 067; J.A. 070; J.A. 104–107. Defendant proffered no evidence to the contrary. Further, Defendant never argued that its kufi policy is justified by a compelling interest, nor

that requiring Louis to remove his kufi during most transports was the least restrictive means of achieving any such interest. Because the uncontroverted facts, viewed in the light most favorable to Defendant, show a violation of RLUIPA, this Court should reverse the district court's dismissal and grant summary judgment for Louis.

**a. Forcing Louis to remove his kufi during transport is a substantial burden on his religious practice.**

"[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Substantial pressure may include "removing privileges in effort to compel compliance." *Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 991, 995–96 (9th Cir. 2005)).

Louis's religious exercise was substantially burdened by SCDC's repeated commands that he remove his kufi or face punishment. Over the course of years of prior transport rides, officers enforcing SCDC's kufi ban have "threatened to write a disciplinary report … for 'failure to obey a direct order' and … waive the scheduled transportation ride due to non-compliance." J.A. 067. During a transport in August 2025, Louis "complied [and removed his kufi] so as not to forfeit [his] court appearance or telephone call the next day"). J.A. 070. Later that year, at a different

prison, an officer told Louis, "Sir, you are not allowed to wear the kufi per policy and you will either take it off … or you will not make it to your court appearance today for 'failure to obey a direct order.'" J.A. 105–106. The next day, on another transport to court, he was "given the same ultimatum—to forgo the kufi or forgo the transportation ride to the courthouse." J.A. 108.

The burden placed on Louis is nearly identical to the substantial burden this Court recognized in *Richardson v. Clarke*. 52 F.4th at 624. In *Richardson*, the prison allowed Muslim prisoners to wear kufis in some parts of the prison, but required their removal in the dining hall, visiting room, and administrative buildings. *Id.* at 622. This Court explained that "the … policy required Richardson to either violate his religious beliefs—by refraining from wearing a head covering at all times—or risk discipline at Deerfield for violating the policy. In other words, Deerfield's head covering policy placed Richardson between the proverbial rock and a hard place." *Id.* at 624; *see also Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (explaining that requiring a prisoner to choose between violating his religious beliefs and facing disciplinary action "easily satisfie[s]" the substantial burden test).

That SCDC's policy does not explicitly state that kufis are banned on transportation is immaterial. Though SCDC's formal written policies never mention wearing kufis on transportation, Defendant has interpreted and implemented them in a manner that bans this conduct. *See* J.A. 046 ("Muslim inmates are currently

prohibited from wearing a kufi on transportation runs per said policies."); J.A. 105–106 ("Sir, you are not allowed to wear the kufi per policy"). In *Pendleton v. Jividen*, this Court held the plaintiff's religious practice was substantially burdened because the prison did not offer a meal free of meat and soy. 96 F.4th 652, 657 (4th Cir. 2024). No written policy stated that the prison must include meat or soy in all meals, but the policy had been implemented to that result. *Id*. Similarly, in *Jehovah v. Clarke,* the plaintiff argued that his religious practice was substantially burdened because he could not find a prison job that allowed him to observe both Saturday and Sunday sabbaths. 798 F.3d 169, 174 (4th Cir. 2015). This Court agreed, even though no written policy required work on Saturdays or Sundays because, as implemented, the prison's policies led to this result. *Id.* at 179. The same is true here.

Finally, the fact that some SCDC staff at times permitted Louis to keep his kufi on during transport does not change the analysis above. J.A. 067 ("[t]here was a few times I was permitted to wear my kufi w/o any conflict."). Louis's evidence shows repeated incidents that substantially burdened his ability to wear his kufi. J.A. 067; J.A. 070; J.A. 105–106; J.A. 107. Defendant offers no evidence to the contrary. Even taking the facts as Defendant characterizes them— "that some times [sic] Plaintiff is permitted to wear a kufi on transport rides and some times [sic] he is not allowed to do so"—Louis has still shown that Defendant placed him between the "proverbial rock and hard place" over and over. J.A. 118. These were not isolated

incidents; the denials occurred while Louis was housed at three different prisons within the SCDC system and were enforced by many different officers citing the same violation and offering similar consequences. J.A. 067; J.A. 070; J.A. 105–106. Senior prison personnel, including the warden at the prison where Louis was incarcerated when he filed this case and the official who reviewed his grievance appeal, confirmed in writing that he was not allowed to wear his kufi on transport *per policy*. J.A. 046; J.A. 049.

In effect, Louis's ability to practice his religion hinges on whether individual officers decide to enforce this policy or to look the other way so that he can engage in his religious practice. Such capricious enforcement does not defeat RLUIPA liability. *See Holt v. Payne*, 85 F.4th 873, 880 (8th Cir. 2023) (recognizing that policy substantially burdened plaintiffs by forbidding kufis outside of religious services, even though prison sometimes "informally allowed" kufis in violation of the policy). If prisons could defeat RLUIPA claims on substantial burden by arbitrarily allowing religious practice sometimes, much of the conduct RLUIPA sought to proscribe would become legal once again. *See Lovelace*, 472 F.3d at 186 (quoting 146 Cong. Rec. S7775 (July 27, 2000)) (explaining that Congress was particularly concerned with the religious rights of prisoners because their "right … to practice their faith is 'at the mercy of those running the institution'"). Such an outcome would reinforce governmental control over religious exercise and run afoul

of RLUIPA's broad construction mandate. 42 U.S.C. § 2000cc-3(g); *see also Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205, 1212 (10th Cir. 1999) (rejecting prison's argument that it had not substantially burdened plaintiff because he could participate in some aspects of Ramadan and not others, as "founded on the unacceptable notion that prison authorities may burden the observance of religious practices for no legitimate reason at all").

**b. SCDC has no compelling interest in forcing Louis to remove his kufi during transport.**

Having shown a substantial burden, the burden of persuasion shifts to Defendant "to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs." *Lovelace*, 472 F.3d at 190; *see also* 42 U.S.C. § 2000cc–2(b). That is, to state a compelling interest. This Court has held that "security reasons" without elaboration is insufficient to meet this standard. *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009); *Couch*, 679 F.3d at 201.

If the prison does not offer evidence of a compelling interest, this Court does not guess at the prison's rationale. *Carter v. Fleming*, 879 F.3d 132, 140 (4th Cir. 2018) ("the courts will not evaluate an interest that the government has not asserted as the justification for the burden"). On summary judgment, evidence of a compelling interest cannot be assumed or inferred; it must be squarely presented with competent evidence. *Lovelace*, 472 F.3d at 191 ("[i]f the dissent's assumptions

about the governmental interests involved here had been included in an affidavit by the warden or some other [prison] official, the district court would have been presented with a different case on summary judgment").

Here, Defendant did not even gesture toward a compelling interest. He presents no competent evidence, such as a declaration from a prison official, explaining why SCDC limits kufis on transport. *See* J.A. 084–103 (the sole exhibit Defendant filed, which never mentions head coverings on transport). He did not even name an interest in his briefing. *See* J.A. 074–083; J.A. 109–119; *see also* Defendant's Reply to Plaintiff's Objection to Report and Recommendation Recommending that District Court Deny Plaintiff's Motion for a Preliminary Injunction, ECF No. 51; Defendant's Response to Plaintiff's Motion for a Preliminary Injunction, ECF No. 32. Because the prison has provided no evidence at all to carry its burden on compelling interest, no reasonable juror could find in its favor.

**c. Even if SCDC has a compelling interest, it is not employing the least restrictive means.**

Even if Defendant had put forth a compelling interest—which he do not—Louis still must prevail because Defendant made no showing that banning kufis on transports is the least restrictive means available to SCDC. To satisfy its burden on the least restrictive means prong of the RLUIPA standard, "the government 'need not conceive of and then reject every possible alternative.' Rather, it must

'demonstrate that it considered and rejected' the alternatives brought to the government's attention." *Faver v. Clarke*, 24 F.4th 954, 960 (4th Cir. 2022) (citing *Greenhill v. Clarke*, 944 F.3d 243, 251 (4th Cir. 2019)).

Louis identifies at least two alternatives. First, he identifies that, as is, SCDC "strip searche[s]" him before and after each transport, and "inspects [his] kufi while doing so." J.A. 067. Louis does not object to these searches. J.A. 067. Defendant never explains why this alternative—strip-searching Louis and inspecting his kufi, both before he boards a transportation ride and after he disembarks, but allowing him to wear his kufi in between—fails to account for any purported compelling interest. Second, he suggests that SCDC could "follow Virginia Dept. of Corrections policy in regards to wearing religious headgear on transportation rides." J.A. 069. Defendant likewise fails to engage with this suggestion.

Further, Louis presents evidence that SCDC's current policy cannot be the least restrictive means because it is underinclusive. When a prison does not pursue its purported compelling interests "with respect to analogous nonreligious conduct," it raises an inference that those interests "could be achieved by narrower [means] that burdened religion to a far lesser degree." *Holt*, 574 U.S. at 368 (*citing Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)). For example, both the U.S. Supreme Court and this Court have held that prison policies were

underinclusive when they barred growing short beards for religious reasons but allowed them for medical reasons. *Holt*, 574 U.S. at 368; *Couch*, 679 F.3d at 204.

Louis proffers evidence that SCDC allows prisoners to wear secular hats during transports. J.A. 068. He has seen other prisoners wear caps, toboggans/beanies, headbands, and rain hats. J.A. 068. In fact, he has, at times, worn these items himself, after being told that he must remove his kufi. J.A. 068. He has asked officers "why can't I where [*sic*] the kufi; but everyone else can wear every other type of headgear. Their response is always 'I don't know sir,' 'I'm just following the rules,' and 'If you don't like the rule, don't come to prison.'" J.A. 068. If SCDC's interests allow for secular hats, it must be able to regulate kufis in a manner less burdensome to Louis's religious practice.

## CONCLUSION

This Court should vacate the district court's judgment, reverse its order dismissing this case on ripeness grounds, and enter summary judgment in favor of Louis. In the alternative, it should reverse and remand for further proceedings.

October 5, 2026

Respectfully Submitted,

/s/ *Lillian Novak*
Lillian Novak
Derrick Luster
Samuel Weiss
RIGHTS BEHIND BARS
1800 M St. NW Front 1, #33821

Washington, DC 20033
lily@rightsbehindbars.org

*Counsel for Appellant Darryl Louis*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,121 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: October 5, 2026

*/s/ Lillian Novak*
Lillian Novak
Rights Behind Bars
1800 M St. NW Front 1 #33821
Washington, DC 20033

*Counsel for Appellant Darryl Louis*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: October 5, 2026

*/s/ Lillian Novak*
Lillian Novak
Rights Behind Bars
1800 M St. NW Front 1 #33821
Washington, DC 20033

*Counsel for Appellant Darryl Louis*