**No. 26-6460**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

DARRYL LOUIS,

*Plaintiff-Appellant,*

*v.*

JOEL ANDERSON,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of South Carolina
No. 1:25-cv-02958 (Hon. Bruce Howe Hendricks, U.S. District Judge)

# JOINT APPENDIX, VOLUME I

Lillian Novak
Derrick Luster
Samuel Weiss
RIGHTS BEHIND BARS
1800 M St. NW Front 1, #33821
Washington, DC 20033
202-455-4399

Andrew F. Lindemann
Lindemann Law Firm, P.A.
5 Calendar Court, Suite 102
Post Office Box 6923
Columbia, SC 29260
803-881-8921

October 5, 2026

## TABLE OF CONTENTS


| ECF No. | Description | Page numbers |
|---|---|---|
| | **Volume I** | |
| 91 | Report and Recommendation regarding Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, for Summary Judgment and Plaintiff's First and Second Motions for Summary Judgment | J.A. 001 – J.A. 023 |
| 98 | Order dismissing case | J.A. 024 – J.A. 031 |
| 99 | Judgment | J.A. 032 |
| | **Volume II** | |
| 1 | Complaint | J.A. 033 – J.A. 045 |
| 1-1 | Attachments to Plaintiff's complaint: administrative grievances | J.A. 046 – J.A. 049 |
| 17 | Amended Complaint | J.A. 050 – J.A. 062 |
| 22 | Answer to Amended Complaint | J.A. 063 – J.A. 065 |
| 25-2 | Declaration of Plaintiff Darryl Keith Louis, Jr. in support of Motion for Preliminary Injunction | J.A. 066 – J.A. 069 |
| 43-1 | Declaration of Plaintiff Darryl Keith Louis, Jr. in support of Objections to Report and Recommendation on Motion for Preliminary Injunction | J.A. 070 |
| 62 | Declaration of Plaintiff Darryl Keith Louis, Jr. | J.A. 071 |
| 71 | Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, for Summary Judgment | J.A. 072 – J.A. 073 |
| 71-1 | Defendant's Memorandum in Support of Motion to Dismiss for Lack of Jurisdiction or, Alternatively, for Summary Judgment | J.A. 074 – J.A. 083 |
| 71-2 | "Inmate Religion" policy, as attached to Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, for Summary Judgment | J.A. 084 – J.A. 103 |
| 75-1 | Declaration of Plaintiff Darryl Keith Louis, Jr. in support of Plaintiff's First Motion for Summary Judgment | J.A. 104 |

| | | |
|---|---|---|
| 82-1 | Declaration of Plaintiff Darryl Keith Louis, Jr. in support of Plaintiff's Second Motion for Summary Judgment | J.A. 105 – J.A. 106 |
| 83 | Declaration of Plaintiff Darryl Keith Louis, Jr. | J.A. 107 |
| 84-1 | Declaration of Plaintiff Darryl Keith Louis, Jr. in support of Plaintiff's Second Motion for Summary Judgment | J.A. 108 |
| 96 | Defendant's Objections to Report and Recommendation regarding Defendant's Motion to Dismiss for Lack of Jurisdiction or, Alternatively, for Summary Judgment and Plaintiff's First and Second Motions for Summary Judgment | J.A. 109 – J.A. 119 |
| 101 | Plaintiff's Notice of Appeal | J.A. 120 |
| | District court docket sheet | J.A. 121 – J.A. 130 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Darryl Keith Louis, Jr., also known as Sadiq,<br><br>Plaintiff,<br><br>vs.<br><br>Joel Anderson,<br><br>Defendant. | C/A No.: 1:25-2958-BHH-SVH<br><br>REPORT AND RECOMMENDATION AND ORDER |

An inmate, Darryl Keith Louis, Jr. ("Plaintiff"), also known as Sadiq, proceeding pro se, sues Joel Anderson ("Defendant"), Interim Director of the South Carolina Department of Corrections ("SCDC"). Plaintiff challenges SCDC's policies forbidding the "wearing a kufi at all times including while on 'transportation rides,'" arguing these policies violate his sincerely-held religious beliefs and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). [ECF No. 17 at 4]. Plaintiff seeks a "prohibitive injunction enjoining defendant and any/all SCDC staff from enforcing the religious policy upon me that prohibits me from wearing a kufi on transportation rides; declaratory judgment that religious policy violates RLUIPA." *Id.* at 6.

This matter comes before the court on cross motions filed by the parties: Defendant's motion to dismiss for lack of jurisdiction or,

alternatively, for summary judgment [ECF No. 71] and Plaintiff's two motions for summary judgment [ECF Nos. 75, 82, 83]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the relevant procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [ECF No. 72]. Defendant filed a response to Plaintiff's first motion for summary judgment [ECF No. 77], and Plaintiff filed a response to Defendant's pending motion [ECF No. 85]. Also before the court is Plaintiff's motion to appoint counsel. [ECF No. 68].

Defendant sought an extension to respond to Plaintiff's second motion for summary judgment and to reply to its pending motion. [*See* ECF No. 87]. The court granted Defendant's motions, *see id.*, but Defendant failed to file either a response or a reply, and the time to do so has expired.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. For the following reasons, the undersigned denies Plaintiff's motion to appoint counsel without prejudice and recommends the district judge deny Defendant's motion and grant Plaintiff's motions, awarding Plaintiff the relief he seeks.[1]

---

[1] On October 6, 2025, the undersigned issued a report and recommendation, in part recommending the district judge grant Plaintiff's motion for injunctive

I. Background

A. SCDC Policy

Defendant represents the wearing of a kufi by Muslim inmates is addressed in Section 15 of the "Al-Islam (Muslim) section of Handbook which is part of SCDC Policy PS-12.05 titled "Inmate Religion." Section 15 states, in pertinent part, as follows: "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors." [*See* ECF No. 71-1 at 3]. Where the handbook does not explicitly address whether a kufi may be worn outside of an institution such as during an inmate transport trip, Defendant represents SCDC Policy PS-12.05 is applicable, where section 4.7 states as follows:

> Recognized faith groups that request a revision of either the beliefs and/or practices as listed in the Handbook will submit the proposed change/request to the Chaplain at his/her institution with a complete description of the requested revision and supporting information from official written documents. The request will be reviewed by the Chaplain and forwarded to the Chief, Pastoral Care Services along with the recommendation of the institutional Chaplain. The request will be considered at the time of the policy's annual review.

[ECF No. 71-1 at 5].

---

relief. [*See* ECF No. 58]. That report remains pending before the district judge.

B. Applicable Grievances

On January 23, 2025, Plaintiff filed a Step 1 grievance concerning this issue and received the following response from the warden:

> I have reviewed your concern. In your grievance, you are requesting to wear a Kufi on any/all future transportation movement According to policy OP-22.13, "Inmate Grooming Standards" dated November I, 2006, states that in order to promote safety, security, and sanitation within the SCDC and to facilitate the identification of inmates, the SCDC, will establish and strictly enforce standards of personal grooming for all inmates, which does not include wearing a Kufi outside the institutions. Policy PS-10.05 "Inmate Religion" dated August 6, 2015 states the SOC will provide guidelines in the development and monitoring of a religious program which will ensure that the constitutional guarantees of religious freedom for inmates are protected within the limitations of security and safety necessary to be maintained in a correctional setting. Muslims inmates may wear a white kufi head covering throughout the facility, indoors and outdoors. It has not been approved for inmates to wear a kufi outside the institution. No evidence can be found in this instance where staff failed to perform their job duties properly and you are encouraged to follow SCDC rules, policies, and procedures.
>
> Therefore, your grievance is denied.

[ECF No. 1-1 at 4].

On February 4, 2025, Plaintiff filed a Step 2 grievance and received the following response:

> Your concern has been reviewed. In it, you express the desire to wear a Kufi on any/all future transportation movement. According to OP-22-13 & PS-10.05, Inmate Grooming Standards and Inmate Religion, respectively. Your concern was appropriately addressed by the Warden on January 31, 2025. Muslim inmates are currently prohibited from wearing a kufi on transportation runs per said policies. You have not presented any new evidence to warrant a change in the decision given. You are required to follow SCDC rules, policies, and procedures. In addition, you have not shown that SCDC staff has failed to perform their job-related duties inappropriately.
>
> Therefore, your grievance is denied.

*Id.* at 1.

C. Plaintiff's Evidence

During this case, Plaintiff has been transferred to multiple different institutions.[2] Plaintiff has submitted evidence concerning each of the places he has been housed, including about being housed in SCDC historically:

> In the past 17 years, I have been on many transportation rides while assigned to maximum, medium, and minimum custody level facilities . . . .
>
> There were a few times I was permitted to wear my kufi w/o any conflict . . . .
>
> Nevertheless, the few officers who have enforced the policy upon me have all threatened to write a disciplinary report upon me for "failure to obey a direct order" and in addition waive the scheduled transportation ride due to non-compliance . . . .
>
> The conundrum is that every time I've been refused to wear my kufi on transportation rides, there was always another inmate also scheduled for transport wearing a secular hat. And sometimes I'll swap out my kufi for a secular hat (after being denied) just to ask the officer why can't I wear the kufi, but I or everyone else can wear every other type of headgear. The response is always "I don't know sir," "I'm just following the rules," and "If you don't like the rule, don't come to prison."

[ECF No. 25-2 at 2–3, *see also e.g.*, ECF No. 43-1 ("Since the filing of ECF 33, I have been on three s[epa]rate transportation rides and was not allowed to wear my kufi during the rides.")]. Plaintiff has also submitted evidence in the

[2] The parties do not dispute that on April 1, 2025, Plaintiff was transferred from Ridgeland Correctional Institution to Wateree Correctional Institution ("Wateree"). On October 7, 2025, Plaintiff was transferred to Trenton Correctional Institution ("Trenton"). [ECF No. 61].

form of an affidavit of Keyon Bowman, a fellow Wateree inmate, who stated that "Darryl Louis recently went on a transportation ride on April 10, 2025 wearing his kufi." [ECF No. 25-3 ¶ 12].

More recently, Plaintiff has submitted undisputed evidence that on October 7, 2025, before boarding transport from Kirkland Reception and Evaluation Center, he was informed by the SCDC's major of division of security to remove his kufi, stating that "kufis are not allowed to be worn while on transportation rides." [ECF No. 62, *see also* ECF No. 75-1].

Plaintiff has also submitted evidence that in early December 2025, in preparation to be transferred from Trenton to the Charleston County Detention Center, he was informed by security personnel that "SCDC does not allow kufis to be worn during transport." [ECF No. 82-1 at 1]. Plaintiff further states:

> On December 8, 2025, at approx. 6:00 am, I was in the holding cell waiting to be strip searched before boarding the transport vehicle.
>
> During the strip search, the officer noticed I had an overnight bag (uniform, hygiene, Quran) and a kufi on my head, and asked me why do I have all that for the transportation ride.
>
> I told him that "I am to believe that I will be housed at the Charleston County Detention Center during the pendency of the trial; and that I'm wearing the kufi due to my Islamic religious belief."

> The officer responded, "Sir, you are not allowed to wear the kufi per policy and you will either take it off and take it and everything except what is legal back to the dorm or you will not make it to your court appearance today for 'failure to obey a direct order.'"

[ECF No. 82-1 at 1–2, *see also* ECF No. 83 (attesting that the same occurred on December 9, 2025, but with a different officer)].

## II. Discussion

### A. Standard on Motion to Dismiss

Dismissal is appropriate under Fed. R. Civ. P. 12 (b)(1) where the court lacks subject-matter jurisdiction. A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be found. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the

movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not

mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. As stated by the Fourth Circuit, "[t]o the extent that 'cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure.'" *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022) (citing *Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021)); *see also Adjei v. Mayorkas*, 59 F.4th 659, 664 (4th Cir. 2023) ("We review cross-motions for summary judgment under the same standard, considering 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'") (citing *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 189 n.2 (4th Cir. 2022)).

C. Analysis

1. RLUIPA Claim

As the court previously noted [*see* ECF No. 58], RLUIPA concerns two areas of government activity: land-use regulation and, as relevant here,

religious exercise by institutionalized persons. 42 U.S.C. § 2000cc–1. RLUIPA, mirroring the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). RLUIPA thus allows prisoners "to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Gonzales v. O Centro Espírita Beneficente Uniõ do Vegetal*, 546 U.S. 418, 436 (2006).

As the Supreme Court noted, several provisions of RLUIPA underscore its expansive protection for religious liberty. *Holt*, 574 U.S. at 358. Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc–3(g). Congress also stated that RLUIPA "may require a

government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc–3(c).

"A plaintiff seeking relief under the RLUIPA bears the initial burden of proving that the challenged policy 'implicates his religious exercise.'" *Richardson v. Clarke*, 52 F.4th 614, 622 (4th Cir. 2022) (citing *Holt,* 574 U.S. 360)); *see also Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012) ("A plaintiff bears the burden of persuasion on whether the policy *or practice* substantially burdens his exercise of religion.") (emphasis added)). Here, Plaintiff has offered undisputed evidence meeting his initial burden of proving SCDC's kufi policy or practice implicates his religious exercise as defined by RLUIPA. [*See also* ECF No. 25-2 ¶¶ 5–6, 15–17].

As Plaintiff has met his initial burden, his RLUIPA claim proceeds in two stages:

> "At the first stage, . . . the plaintiff must show that the prison's policies imposed a substantial burden on his exercise of sincerely held religious beliefs." *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019) (citing *Carter v. Fleming*, 879 F.3d 132, 139–40 (4th Cir. 2018)). In order to show that his religious beliefs have been substantially burdened, a plaintiff must show that a government entity has substantially pressured him to modify his behavior and violate his beliefs. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).
>
> If the plaintiff can make that showing, the court proceeds to the second stage to determine whether the prison's policies are justified despite the imposed burden. Under the RLUIPA, the government has the burden to show that its policy satisfies strict

> scrutiny: that is, the policies must represent the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc–1(a); *Holt v. Hobbs,* 574 U.S. at 357–58, 135 S.Ct. 853.

*Richardson*, 52 F.4th at 622.

Considering the first stage, Plaintiff has submitted undisputed evidence that SCDC has substantially pressured him to modify his behavior and violate his beliefs. Plaintiff has offered evidence—not addressed by Defendants—that

> [T]he few officers who have enforced the policy upon me have all threatened to write a disciplinary report upon me for "failure to obey a direct order" and in addition waive the scheduled transportation ride due to non-compliance.

[*See* ECF No. 25-2 ¶¶ 5–6, *see also* ECF No. 43-2 ¶ ("On August 27, 2025, I went on another transportation ride to the U.S. District Court for a separate pending suit. Although I attempted to wear my kufi during the ride, I was reminded of the above-mentioned policy and was required to remove it off my head. I complied so as not to forfeit my court appearance or telephone call the following day.")].[3]

Turning to the second stage, Defendant bears the burden to show SCDC's kufi policy is the least restrictive means of furthering a compelling

---

[3] Plaintiff has provided additional evidence—unaddressed by Defendant—concerning potential disciplinary offenses he could be charged with for failure to remove his kufi. [*See* ECF No. 25-1 at 3–4].

governmental interest and to address alternatives brought to SCDC's attention. Because "least restrictive means" is a relative term that "implies a comparison with other means," the government must "acknowledge and give some consideration to less restrictive alternatives" to determine whether an alternative "might be equally as successful as the Policy in furthering the identified compelling interests." *Faver v. Clarke*, 24 F.4th 954, 960 (4th Cir. 2022) (citing *Couch v. Jabe*, 679 F.3d 197, 203–04 (4th Cir. 2012)). But in carrying this burden, the government "need not conceive of and then reject every possible alternative." *Id.* (citing *Greenhill*, 944 F.3d at 251). Rather, "it must 'demonstrate that it considered and rejected' the alternatives brought to the government's attention." *Id.* (citing *Greenhill*, 944 F.3d at 251).

Even though Defendant bears the burden, he has not addressed Plaintiff's arguments that SCDC's kufi policy is not the least restrictive means of furthering a compelling governmental interest and that there are other feasible alternatives. As Plaintiff states:

> Assuming arguendo that the defendant claims the current policy serves the compelling interest of security, insofar as a kufi provides a place for inmates to hide weapons, contraband, and aids in the facilitating of an escape, Sadiq concedes to this argument . . . . However, as this argument applies to Sadiq, the prohibition on wearing a kufi while on transportation rides is not the least restrictive. As a matter of fact, the policy is underinclusive as SCDC does not restrain inmates from wearing secular hats (e.g., caps, rain gear with hoods, and head bans) while on transportation rides. Further . . . . Sadiq has been on

> numerous transportation rides while wearing a kufi (to/from maximum, medium, and minimum security level facilities) . . . . This is prima-facie evidence that Sadiq and other inmates at certain periods of time during their incarceration have been allowed to wear a kufi and the SCDC religious policy was not enforced during those periods.

[ECF No. 25-1 at 5–6, *see also* ECF No. 25-2 ¶ 23 ("SCDC could simply adopt the Virginia Dept. of Corrections policy in regards to wearing religious headgear on transportation rides; and/or officially adopt the procedures/treatment of the majority of officers who have allowed me to wear my kufi")].[4]

Against this backdrop, the undersigned considers the pending motions.

2. Defendant's Motion to Dismiss or for Summary Judgment

In support of its motion to dismiss/summary judgment, Defendant makes two arguments: (1) the *Ex parte Young* stripping doctrine is not applicable in the instant case, and (2) Plaintiff's RLUIPA claim is not ripe for adjudication.

Turning to the first argument, Plaintiff has sued Defendant, as the Interim SCDC Director, in his official capacity only. In his official capacity, Defendant is not a "person" amenable to suit under 42 U.S.C. § 1983. In *Will v. Michigan State Police*, 491 U.S. 58 (1989), the Supreme Court held that the

[4] Plaintiff has provided additional arguments concerning alternatives, which Defendant did not address. [*See* ECF No. 25-1 at 9–10].

state is not a "person" amenable to suit under 42 U.S.C. § 1983. "Official capacity suits . . . genuinely represent only another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159 (1985). Accordingly, in his official capacity, Defendant is a state official and is generally not subject to suit under § 1983.

However, as the Fourth Circuit has explained,

> Under *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law. This exception to Eleventh Amendment immunity is designed to preserve the constitutional structure established by the Supremacy Clause and rests on the notion, often referred to as "a fiction," that a state officer who acts unconstitutionally is "stripped of his official or representative character and thus subjected in his person to the consequences of his individual conduct."

*Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018) (citations omitted)). "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an *ongoing* violation of federal law." *Id.* (emphasis in original). Moreover, to fall within the *Ex parte Young* exception to Eleventh Amendment immunity, a state official must have a "special relation" to the challenged action, which is "a measure of *proximity to* and *responsibility for* the challenged state action." *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). (emphasis in original).

Defendant argues that where Plaintiff has failed to identify a specific policy prohibiting him from wearing a kufi while on transportation rides, Plaintiff has failed to carry his burden to show the *Ex parte Young* exception to Eleventh Amendment immunity applies. [*See* ECF No. 71-1 at 3–4 (citing *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018) (burden of proving the applicability of *Ex parte Young* stripping doctrine is on the plaintiff))]. Defendant argues "there is no explicit or even implicit policy that allows or disallows the wearing of a kufi on transport rides, and certainly, there is no evidence of such a policy being adopted or implemented by Defendants Anderson." *Id.* at 4.

The court disagrees. Plaintiff has offered ample undisputed evidence that pursuant to policy—implicit or otherwise—he is not allowed to wear a kufi on transport rides, as he has been informed repeatedly from multiple corrections officers and a SCDC warden.

Additionally, the court is not aware of binding case law, nor has Defendant provided any case law, indicating that the *Ex parte Young* exception to Eleventh Amendment immunity requires Plaintiff to identify a formal policy being challenged as opposed to identifying "an ongoing violation of federal law." *See Allen*, 895 F.3d at 354. Instead, the Supreme Court has instructed that "whether the doctrine of *Ex parte Young* avoids an Eleventh

Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation omitted)).

Accordingly, the undersigned recommends the district judge deny Defendant's motion to dismiss/summary judgment concerning the *Ex parte Young* stripping doctrine.

Turning to his second argument, Defendant argues this case is not ripe where Plaintiff has failed to avail himself of the procedure outlined in SCDC Policy PS-12.05, section 4.7, to seek a revision of SCDC handbook. [*See* ECF No. 71-1 at 5 ("Thus, as a prerequisite for seeking the injunctive relief sought in this litigation, the Plaintiff must initially demonstrate that he has fully complied with SCDC policy that governs that process.")].

In support, Defendant cites a case where the plaintiff, like here, asserted a claim for violation of his RLUIPA rights, seeking to have his religion "recognized as an official faith in the SCDC." *Taylor v. Byars*, C/A No. 1:11-915-TLW-SVH, 2012 WL 2149756, at *1 (D.S.C. May 23, 2012), report and recommendation adopted, C/A No. 1:11-915-TLW-SVH, 2012 WL 2149761 (D.S.C. June 13, 2012), aff'd, 490 F. App'x 603 (4th Cir. 2012).

In rejecting his claim, the court found the plaintiff had failed to exhaust his administrative remedies, turning to the following evidence:

> In reviewing [Plaintiff's] 37 grievances, I have determined that none of the grievances complain that SCDC does not officially recognize Shetaut Neter as a religion. In addition, none of the grievances complain that SCDC chaplains or other officials failed to properly process any request that Shetaut Neter be officially recognized as a religion in accordance with SCDC policy PS–10.05 entitled "Inmate Religion."

*Id.* at *3.

Although Defendant argues otherwise, this case does not support his position that Plaintiff, by failing to comply with SCDC Policy PS-12.05, section 4.7, has presented a claim that is not ripe to this court.[5]

Defendant next argues that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." [ECF No. 71-1 at 7 (citing *Texas v. United*

---

[5] Defendant does not dispute that Plaintiff has exhausted his administrative remedies. [ECF No. 71-1 at 6]. Defendant also does not address Plaintiff's argument that Plaintiff was not informed that he needed to avail himself of any additional procedures beyond exhausting his administrative remedies:

> [R]ather than addressing any of the possible technical deficiencies, SCDC's response to Sadiq's ARTSM stated 'This is not allowed." [See ECF 33 at 1]. Likewise, SCDC's responses to Sadiq's step-1 and step-2 grievances similarly did not mention any technical deficiencies in either Sadiq's initial request or his subsequent appeals . . . . Thus, at every step of the process, SCDC denied Sadiq's request on the merits rather than because of any procedural deficiencies in his request.

[ECF No. 43 at 5].

*States*, 523 U.S. 296, 300 (1998))]. However, Plaintiff has presented evidence that the violation he complained of has occurred many times over the course of the past 17 years and continues to occur to the present day. Although Defendant argues otherwise, this dispute is not abstract.

As the Fourth Circuit explains:

> The doctrine of ripeness arises from the case or controversy requirement of Article III. *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). A case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted). In contrast, a case is ripe for judicial decision when the "controversy is final and not dependent on future uncertainties." *Id.* (citation omitted). Thus, when a claim is "presented in a clean-cut and concrete form," the issue is ripe for adjudication. *South Carolina*, 912 F.3d at 730 (citation omitted). The plaintiff bears the burden of establishing ripeness. *Doe*, 713 F.3d at 758.

*Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022).

Here, Plaintiff has carried his burden to establish ripeness.

Defendant also indicates that because the evidence shows that Plaintiff has not been consistently denied the ability to wear a kufi on transportation rides, somehow his claim is not ripe. [ECF No. 71-1 at 9 (arguing the evidence "[a]t best, [] shows that sometimes the Plaintiff is permitted to wear a kufi on transport rides and sometimes he is not allowed to")].

However, Defendant has offered no case law, nor is the court aware of any, supporting the position that Defendant must consistently violate Plaintiff's RLUIPA rights for his RLUIPA claims to be considered ripe or otherwise viable, particularly considering Congress' expressed concern in enacting RLUIPA of state institutions imposing "frivolous or arbitrary barriers impeding institutionalized persons' religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005)); *see also* 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA) ("Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways"); *id.* ("Institutional residents' right to practice their faith is at the mercy of those running the institution . . . ."). Defendant appears to argue that the court should consider the matter only a little pregnant, rather than pregnant. The court declines to do so.

Accordingly, the undersigned recommends the district judge deny Defendant's motion to dismiss/summary judgment on ripeness grounds.

1:25-cv-02958-BHH Date Filed 02/04/26 Entry Number 91 Page 21 of 23

3. Plaintiff's Motions for Summary Judgment

Plaintiff filed two motions for summary judgment concerning his RLUIPA claim. [ECF Nos. 75, 82, *see also* ECF No. 83].[6] Defendant has filed a response to only the first motion. [*See* ECF No. 77]. In that response, Defendant reiterates his previous arguments already addressed by the court, including that Plaintiff has "presented conflicting evidence as to whether he is generally permitted to wear a kufi on a transport trip," precluding grant of summary judgment to him. *Id.* at 2.

As noted above, Defendant has offered no argument or case law indicating that because Plaintiff, over the years, has been allowed to wear his kufi on transports sometimes, but has not been allowed to otherwise and was informed repeatedly that he was not allowed to pursuant to "policy," that the inconsistency is somehow fatal to his RLUIPA claim.

[6] Plaintiff argues—and Defendant does not address—that because of newly-discovered evidence, his second motion for summary judgment is appropriate in this case. [*See* ECF No. 82 at 1–2]. As Plaintiff correctly argues, "[w]hether to consider a successive summary judgment motion is committed to the district court's discretion . . . ." *Oakwood Prods., Inc. v. SWK Techs., Inc.*, 774 F. Supp. 3d 734, 755 (D.S.C. 2025); *see also Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010) ("Allowing a successive summary judgment motion potentially can save all concerned the far greater expenses of a trial."); Fed. R. Civ. P. 1 (courts should construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").

Accordingly, the undersigned recommends the district judge grant Plaintiff's motions for summary judgment.[7]

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned denies as moot, and without prejudice, Plaintiff's motion to appoint counsel [ECF No. 68] and recommends the district judge deny Defendant's motion to dismiss or, alternatively, motion for summary judgment [ECF No. 71] and grant Plaintiff's motions for summary judgment [ECF Nos. 75, 82].

IT IS SO ORDERED AND RECOMMENDED.

February 4, 2026
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

[7] In light of the recommendation, the undersigned denies as moot Plaintiff's motion to appoint counsel, without prejudice. [ECF No. 68]. If the district judge does not adopt the above recommendations—particularly if this case proceeds to trial—Plaintiff may refile his motion.

1:25-cv-02958-BHH Date Filed 02/04/26 Entry Number 91 Page 23 of 23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Darryl Keith Louis, Jr., also known as Saddiq, | ) | |
| Plaintiff, | ) | Civil Action No. 1:25-cv-2958-BHH |
| v. | ) | **ORDER** |
| Joel Anderson, | ) | |
| Defendant. | ) | |

Plaintiff Darryl Keith Louis, Jr., also known as Saddiq ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, sued South Carolina Department of Corrections' ("SCDC") Interim Director Joel Anderson, in his official capacity, alleging that SCDC's policy forbidding the "wearing [of] a kufi at all times including while on 'transportation rides'" violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*[1] (ECF No. 17 at 4.) Plaintiff seeks a "prohibitive injunction enjoining defendant and any/all SCDC staff from enforcing the religious policy upon me that prohibits me from wearing a kufi on transportation rides." (*Id.* at 6.)

Defendant filed a motion to dismiss for lack of jurisdiction or, alternatively, for summary judgment. (ECF No. 71). Plaintiff filed two motions for summary judgment. (ECF Nos. 75, 82.) Plaintiff filed a response in opposition to Defendant's motion, (ECF No. 85),

---

[1] RLUIPA forbids any "person acting under color of State law" from "impos[ing] a substantial burden on" an incarcerated person's "religious exercise" "unless the [defendant] demonstrates that the imposition of the burden" "is in furtherance of a compelling government interest; and is the least restrictive means of furthering that" interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-5(4)(A)(iii).

and Defendant filed a response in opposition to Plaintiff's first motion for summary judgment. (ECF No. 77). Plaintiff also filed a motion to appoint counsel. (ECF No. 68.)

Pursuant to the provisions of Title 28, U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), these pending motions were referred to a United States Magistrate Judge for consideration.

This matter is now before the Court for review of Magistrate Judge Shiva V. Hodges' Report and Recommendation ("Report"), which recommends that the Court deny without prejudice Plaintiff's motion to appoint counsel, deny Defendant's motion, grant Plaintiff's motions for summary judgment, and award Plaintiff the relief he seeks. (ECF No. 91.) Defendant filed objections to the Report, and the matter is ripe for review. (ECF No. 96.)

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

The Report contains a detailed summary of this case and sets forth the correct legal standards. Because no party objects to these portions of the Report, the Court incorporates the procedural history, background, and legal standards from the Report without further recitation.

**<u>STANDARD OF REVIEW</u>**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of a Report to which a specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28

U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

### I. Defendant's Objection on Ripeness Grounds[2]

In his motion to dismiss, Defendant argues that Plaintiff has not presented a RLUIPA claim that is justiciable and ripe for adjudication by this Court. (ECF No. 71.) The Magistrate Judge rejected this argument in her Report, finding that "Plaintiff has carried his burden to establish ripeness." (ECF No. 91 at 19.) Defendant objects to this finding and argues that "the Magistrate Judge committed several errors." (ECF No. 96 at 6.)

First, Defendant notes that, contrary to the Magistrate Judge's recommendation, there is no policy prohibition to enjoin because Plaintiff has not identified the policy "adopted or implemented by the Defendant Anderson that [Plaintiff] seeks to be enjoined." (*Id.*) Defendant states that the wearing of a kufi by Muslim inmates is only "addressed in Section 15 of the Al-Islam (Muslim) section of [the] Handbook[,] which is part of SCDC Policy PS-12.05 titled 'Inmate Religion,'" and, notably, Section 15 does not "explicitly address whether a kufi may be worn outside of an institution such as during transport." (*Id.*) Indeed, it is undisputed that Section 15 states, in relevant part: "Muslin inmates may wear a white kufi head covering throughout the facility, indoors and outdoors." (*Id.*) Thus,

[2] Given the Court's ruling herein, the Court does not address Defendant's other objections to the Report.

Defendant points out, "the current and existing policy is silent on the issue" before the Court. (*Id.*)

What is more, Defendant argues, is that "where new issues arise" – such as the issue of which Plaintiff complains – "SCDC Policy PS-12.05 [] provide[s] for a procedure for an inmate to request revisions to the religious practices as addressed in the Handbook." (*Id.*) Indeed, it is undisputed that Section 4.7 states:

> Recognized faith groups that request a revision of either the beliefs and/or practices as listed in the Handbook will submit the proposed change/request to the Chaplain at his/her institution with a complete description of the requested revision and supporting information from official written documents. The request will be reviewed by the Chaplain and forwarded to the Chief, Pastoral Care Services along with the recommendation of the institutional Chaplain. The request will be considered at the time of the policy's annual review.

(*Id.* at 6-7; *see* ECF No. 71-2 at 6.) But, here, Defendant notes, Plaintiff "has not pled nor presented proof that he has complied" with SCDC policy, and "there is no evidence that the Plaintiff has made a request for an amendment to Section 15 of the Al-Islam (Muslim) section of [the] Handbook." (*Id.* at 7.) As a result, Defendant contends that the Magistrate Judge erred in failing to conclude that Plaintiff's request for permanent injunctive relief is not ripe for adjudication. (*Id.*)

Defendant also argues that the Report "erroneously discounts" the decision in *Taylor v. Byars*, No. 1:11-915-TLW-SVH, 2012 WL 2149756 (D.S.C. 2012), *R&R adopted*, 2012 WL 2149761, *aff'd*, 490 F. App'x 603 (4th Cir. 2012). (*Id.*)

> In *Taylor*, an SCDC inmate alleged that he was a practitioner of the religion Shetaut Neter and "that Defendants have violated his rights by denying his request to have the religion recognized as an official faith in the SCDC." 2012 WL 2149756, [at] *1. While dismissing the case for failure to exhaust administrative remedies under the PLRA, this Court further recognized that the inmate "makes no allegation that he had initiated the process to seek official recognition of the religion, that the process outlined in SCDC Policy

> PS-10.05 was not complied with, or that Shetaut Neter has been denied official recognition by the acts of any SCDC officials." 2012 WL 2149756, [at] *3. That is, indeed, a specific reference to the application of Section 4.7 of SCDC Policy PS-12.05 and a ripeness defense, which can be confirmed by reference to the record in *Taylor*. In sum, contrary to the Magistrate Judge's reading, this Court in *Taylor* agreed that the plaintiff's claim was also not ripe for adjudication.

(*Id.* at 7-8.) Defendant then clarifies that he "is not arguing that the Plaintiff failed to exhaust under the dictates of the PLRA but rather that the Plaintiff has not presented a claim that is ripe for adjudication in the first place." (*Id.* at 8.)

Lastly, Defendant argues that the Magistrate Judge erred in her analysis of Plaintiff's evidence, which Defendant contends shows "[a]t best, . . . that some times Plaintiff is permitted to wear a kufi on transport rides and some times he is not allowed to do so." (*Id.* at 10.) But, Defendant argues, "[t]hat does not demonstrate an unconstitutional policy has been adopted or implemented or one that needs to be enjoined." (*Id.*)

## II. This Court's *De Novo* Review

After *de novo* review, the Court finds that the record indisputably reveals that Plaintiff has not shown that SCDC's current "Inmate Religion" policy explicitly prohibits the wearing of a kufi outside of the institutions or that he has taken the appropriate steps, as dictated by Section 4.7, to seek a change to SCDC's current policy on wearing a kufi. Thus, the Court fully agrees with Defendant that "[u]ntil such a request is made [by Plaintiff] and a decision rendered under Section 4.7," Plaintiff's present claim is not ripe. (ECF No. 96 at 9.)

At its core, the concept of "ripeness" is rooted in the Constitutional limitation on the authority of federal courts to hear only "cases" and "controversies." U.S. Const., Art. III, § 2; s*ee also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016), *as revised* (Feb. 9,

2016); *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013). Federal courts are not there to resolve abstract disagreements or give their opinion about speculative matters. *Permanent Gen. Assur. Corp. v. Moore*, 341 F. Supp. 2d 579, 581 (D.S.C. 2004).The focus of the ripeness inquiry is on "whether there yet is any need for the court to act." Wright, Miller & Cooper, Federal Practice and Procedure, § 3532.1 (2d ed. 1984). "The issue of ripeness entails an analysis considering the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute." *Scoggins*, 718 F.3d at 270.

Here, Plaintiff has not yet given SCDC a chance to consider a request for amendment of the policy to allow Muslims to wear a kufi outside of its institutions, such as during transport rides. Until SCDC rejects or denies such a request and/or implements a specific policy prohibiting Muslims from wearing a kufi outside its institutions, such as during transport rides, there remains a question about SCDC's view and handling of the issue (as indeed confirmed by Plaintiff's own evidence in this case). In other words, because there has been no specific determination that a kufi cannot be worn during transport, the Court cannot say whether any hypothetical policy or even a denial of Plaintiff's amendment request would infringe on Plaintiff's religious practices in violation of RLUIPA. *Christian Methodist Episcopal Church v. Montgomery*, No. CIVA 4:94CV22322 RBH, 2007 WL 172496, at *7 (D.S.C. Jan. 18, 2007) (zoning context) (finding RLUIPA claim not ripe for adjudication where "the process has not even been followed by the landowners yet"); *see also State of Ohio ex rel. Scadden v. State of Ohio*, 2002 WL 452472, at *7 ("Our determination of such would be premature, given that appellants may file for a certificate of zoning compliance, which could still hypothetically be granted . . . .

Thus, given there has been no determination by any agency or tribunal that the zoning resolution prohibits the particular use in question, we cannot say whether any hypothetical prohibition would infringe on appellants' religious practices in violation of RLUIPA or any constitutional provisions."), *appeal not allowed*, 772 N.E.2d 1204 (Ohio App. 10 Dist. 2002); *Cain v. Michigan Dep't of Corr.*, No. 1:07-CV-543, 2011 WL 446050, at *1 (W.D. Mich. Feb. 1, 2011) (overruling Plaintiff's objection to the report, insisting that his grievance was denied at Step III, and holding that "[o]n the record before this court, no determination has been made whether Plaintiff may possess the requested items. Therefore, the claim is not ripe.").

In sum, the Court finds that the "controversy" is not yet final. Further, while denying judicial review on Plaintiff's claim may create a hardship, the Court finds that any hardship is relatively minor in comparison to the potential unwarranted intrusion by the federal courts into the State's operation of its prisons were the Court to grant injunctive relief on this incomplete record. Accordingly, the Court sustains Defendant's ripeness objection to the Report and agrees that this matter is not yet ripe for adjudication.

## CONCLUSION

For the reasons set forth herein, the Court respectfully **declines to adopt** the Magistrate Judge's Report issued on February 4, 2026 (ECF No. 91); the Court **sustains** Defendant's ripeness objections (ECF No. 96); the Court **grants** Defendant's motion to dismiss (ECF No. 71) because Plaintiff's RLUIPA claim is not yet ripe; and the Court **finds moot** Plaintiff's motion to appoint counsel and motions for summary judgment (ECF Nos. 68, 75, 82).

Additionally, the Court respectfully **declines to adopt** the portion of the Magistrate Judge's Report issued on October 6, 2025, (ECF No. 58), which recommends that the Court grant Plaintiff's motion for preliminary injunction and temporary restraining order. Instead, given the Court's findings herein, the Court **denies** Plaintiff's motion for preliminary injunction and temporary restraining order (ECF No. 25).

Accordingly, this case is hereby **dismissed without prejudice**.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 26, 2026
Charleston, South Carolina

1:25-cv-02958-BHH Date Filed 03/26/26 Entry Number 99 Page 1 of 1



# UNITED STATES DISTRICT COURT

for the

District of South Carolina

| | | |
|---|---|---|
| Darryl Keith Louis, Jr.,<br>*Plaintiff*<br>v.<br>Joel Anderson,<br>*Defendant* | )<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-02958-BHH |

**JUDGMENT IN A CIVIL ACTION**

The court has ordered that:

■ other: the action is dismissed without prejudice.

This action was *(check one)*:

❒ tried by a jury, the Honorable ______________ presiding, and the jury has rendered a verdict.

❒ tried by the Honorable ____________ presiding, without a jury and the above decision was reached.

■ decided by the Honorable Bruce Howe Hendricks, United States District Judge.

Date: March 26, 2026

*ROBIN L. BLUME, CLERK OF COURT*

s/C. Priester

*Signature of Clerk or Deputy Clerk*